CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 26 2019

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| CYNTHIA D.,[1] | ) |
|     Plaintiff, | )  Civil Action No. 4:18-cv-00036 |
| | ) |
| v. | )  REPORT & RECOMMENDATION |
| | ) |
| COMMISSIONER OF SOCIAL | )  By:  Joel C. Hoppe |
| SECURITY, | )        United States Magistrate Judge |
|     Defendant. | ) |

    Plaintiff Cynthia D. asks the Court to review the Commissioner of Social Security's final decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 6. Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence and should be affirmed.

I. Standard of Review

    The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See*

*Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 416.920(a)(4).[2] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

On November 20, 2013, Cynthia filed for SSI alleging that she was disabled by depression, bipolar disorder, arthritis, spinal stenosis, asthma, diabetes, and stroke. *See* Administrative Record ("R.") 15, 94, 212–19, ECF No. 19. She was fifty-five years old, or a "person of advanced age" under the regulations, when she filed this claim. *See* R. 26, 94; 20 C.F.R. § 416.963(e). Disability Determination Services ("DDS"), the state agency, denied her claim initially in July 2014, R. 94–107, and upon reconsideration that September, R. 108–22.

In February 2016, Cynthia appeared without representation for an administrative hearing before ALJ Mark O'Hara. R. 33–46. Cynthia's adult daughter also attended. After trying to explain Cynthia's right to hire a lawyer, ALJ O'Hara asked Cynthia if she "really underst[ood] what's going on here[.]" R. 37–38. Her daughter said Cynthia was "in the beginning stages" of dementia, R. 39, and was "not understanding," R. 38. ALJ O'Hara postponed the hearing so that Cynthia could find an attorney and collect her updated medical records. *See* R. 41–45. He "strongly hope[d]" she had counsel at the next hearing "because of the questions [about] her ability to act [i]n her own best interest." R. 42; *see* R. 39. He also suggested that her daughter contact the University of Virginia Health System to see if Cynthia qualified for financial assistance so she could undergo a neuropsychological evaluation that her neurologist had

---

[2] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

3

recommended. R. 41; *see* R. 38–39. On October 14, 2016, Cynthia appeared with counsel and testified at a second hearing before ALJ O'Hara. R. 47–93. Cynthia's adult daughter Patricia and a vocational expert ("VE") also testified at this hearing. R. 74–87, 87–91.

ALJ O'Hara issued an unfavorable decision on May 1, 2017. R. 15–27. He explained at the outset that, although Cynthia alleged her disability began in September 1994, she could not receive SSI payments for any period before she filed her application in November 2013. R. 16 (citing 20 C.F.R. § 416.335). Thus, the "relevant period" for this claim was November 20, 2013, though May 1, 2017. *See* R. 21–27. At step one, ALJ O'Hara found that Cynthia had not engaged in substantial gainful activity for a very long time, including anytime after November 20, 2013. R. 17. At step two, ALJ O'Hara found Cynthia had the "following severe impairments (at least in combination): obesity and a history of transient ischemic attacks (TIAs) and coronary artery disease, as well as [a] questionably severe cough variant asthma/chronic obstructive pulmonary disease (COPD) and bipolar disorder." R. 17. These impairments did not meet or medically equal the relevant listed impairments. R. 19–20 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 3.02, 12.02, 12.04 (2017)).

ALJ O'Hara then evaluated Cynthia's residual functional capacity ("RFC") and found that she was limited to "medium work"[3] that involved "simple, repetitive" tasks and did not require "concentrated exposure to extreme heat, wetness, humidity, and respiratory irritants." R. 20–21. ALJ O'Hara skipped step four because Cynthia did not have any past relevant work. R. 26. Finally, based on his RFC finding and the VE's testimony, ALJ O'Hara concluded that Cynthia was not disabled after November 20, 2013, because she still could perform certain

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 416.967(c), and "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). *See* R. 20–21.

4

medium unskilled occupations (machine feeder, packer, and warehouse worker) that offered a significant number of jobs in the national economy. R. 26–27; *see* R. 89–90. The Appeals Council denied Cynthia's request for review, R. 1–5, and this appeal followed.

III. Discussion

Cynthia makes two arguments on appeal. *See* Pl.'s Br. 7–8, 8–9, ECF No. 21. First, she asserts that ALJ O'Hara violated the Social Security Administration's ("SSA") Acquiescence Ruling 00-01(4) because he "never mentioned or even considered," *id.* at 8, Cynthia's testimony "that she previously received SSI based on her bipolar disorder," *id.* at 7 (citing 2000 WL 43774 (Jan. 12, 2000)). Second, Cynthia challenges ALJ O'Hara's conclusion that her psychiatric and cardiac symptoms were not "as serious as she claimed because of the lack of treatment by a mental health professional and a cardiologist." *Id.* at 9. She asserts that the ALJ "disregarded" evidence suggesting that Cynthia "had difficulties" finding affordable treatment in reaching that conclusion. *See id.* at 8–9 (citing *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) ("A claimant may not be penalized for failing to seek treatment she cannot afford.")). These arguments are not persuasive.

A.  *Acquiescence Ruling 00-1(4)*

Acquiescence Ruling ("AR") 00-1(4) instructs ALJs how to proceed when a Virginia resident's case file for "an unadjudicated period" includes "a final decision of [the] SSA after a hearing on a prior disability claim [that] contains a finding required at a step in the sequential evaluation process for determining disability." *See* 2000 WL 43774, at *4 (interpreting *Albright v. Comm'r*, 174 F.3d 473 (4th Cir. 1999); *Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987)). The Ruling "applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining

5

disability," such as the nature or severity of the claimant's medical impairment, that "was made in a final decision by an ALJ or the Appeals Council on a prior disability claim." *Id.* (citing 20 C.F.R. §§ 404.1520, 416.920); *see Taylor v. Colvin*, No. 3:12cv8626, 2013 WL 6243716, at *13–14 (S.D. W. Va. Dec. 3, 2013) (explaining that AR 00-1(4) is a "very limited" exception to the SSA's general rule that it "does not consider findings made during the determination of a disability claim [as] . . . evidence relevant to the determination of a later-filed claim"). If those criteria are met, then the SSA "must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances" in the claimant's pending case. AR 00-1(4), 2000 WL 43774, at *4 (listing three factors the adjudicator will consider in determining what weight to give the factual finding). Prior administrative findings about facts that are subject to change over time, such as the claimant's RFC or the severity of her medical condition, typically deserve "less weight" as the prior period "becomes more remote." *Id.*

Cynthia's administrative record contains the following evidence about a prior disability claim:

- The state agency's initial Disability Determination Explanation denying Cynthia's current SSI claim, dated July 30, 2014, indicates that her SSA file included one "prior electronic filing" for SSI. R. 95. Cynthia filed that claim on April 22, 2005, and it was "closed" at the Reconsideration level based on a "determination or decision" dated March 7, 2006. *Id.* The Disability Field Report accompanying this Explanation states that Cynthia's prior claim terminated at the "Reconsideration or FedRO Review" level by a "denial" issued on March 7, 2006. R. 229.
- On July 9, 2014, Cynthia told Franklin Russell, Ph.D., "that she was awarded Social Security disability income at one time because of bipolar disorder." R. 414; *accord* R. 416–17 ("She has been awarded Social Security income in the past due to bipolar disorder.").
- At the ALJ hearing in October 2016, Cynthia testified that she "g[o]t disability" for

> bipolar disorder "at one point," but her SSI benefits stopped after she "got remarried and
> [her] husband made too much money." R. 58. Cynthia married her second husband in
> December 1998, and they divorced in 2010. *See* R. 214, 414. She did not get remarried.

None of this evidence establishes that Cynthia's prior claim resulted in "a final decision *of a previous ALJ* awarding [her] SSI" or other disability benefits. Pl.'s Br. 7 (emphasis added); *see* Def.'s Br. 5–6, ECF No. 24. Cynthia also does not identify any factual "finding [from] a final decision" by an ALJ or the Appeals Council that ALJ O'Hara should have considered in this case. Def.'s Br. 5–6; *see Taylor*, 2013 WL 6243716, at *14–15. Instead, she asserts that ALJ O'Hara misapplied AR 00-1(4) because he "never mentioned or even considered" Cynthia's subjective reports that she once received SSI. *See* Pl.'s Br. 7–8 (citing R. 58, 416–17).

     Cynthia's recollection is not a "finding required at a step in the sequential evaluation process for determining disability . . . *which was made in a final decision by an ALJ* . . . on a prior disability claim." AR 00-1(4), 2000 WL 43774, at *4 (emphasis added). Thus, ALJ O'Hara was not required to give that evidence special consideration under AR 00-1(4). *See Taylor*, 2013 WL 6243716, at *14–15 (citing AR 00-1(4), 2000 WL 43774, at *4). Moreover, ALJ O'Hara did mention Cynthia's testimony that she received SSI for her "history of bipolar disorder" and that she lost those benefits after "she remarried [because] her husband made too much money." R. 21 (citing R. 58). He then explained why, based on relevant evidence in the record, her bipolar disorder and other medical conditions were not disabling between November 2013 and May 2017. *See generally* R. 17–25. There is no reason to believe ALJ O'Hara failed to consider evidence "specifically referenced" in his decision. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). His failure to "assign a specific evidentiary weight" to the "mere fact that [Cynthia] received benefits in the past does not . . . justify a remand in this case given that the probative value of the prior award[] is illusory" and of at most "marginal significance . . . to

7

[her] current application." *Taylor*, 2013 WL 6243716, at *14; *see* Def.'s Br. 5, 8–10 (noting that Cynthia testified she received SSI before she got remarried in December 1998, which was nearly fifteen years before she filed her current claim in November 2013).

B.  *Cynthia's Symptoms*

"Symptoms" are the claimant's own description of her medical impairments. 20 C.F.R. § 416.902(n) (2018). The regulations set out a two-step process for ALJs to evaluate symptoms as part of the sequential disability determination process. *See Lewis*, 858 F.3d at 865–66; 20 C.F.R. § 416.929(b)–(c). "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms." *Lewis*, 858 F.3d at 866. Second, assuming the claimant clears the first step, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit [her] ability to perform basic work activities" generally, *id.*, or to work on a regular and continuing basis, *see Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). "The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, after considering all relevant evidence in the record, 20 C.F.R. § 416.929(c)(4). The ALJ must give specific, legally adequate reasons supported by "references to the evidence" for the weight assigned to the claimant's statements. *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013). A reviewing court will defer to those weights when the ALJ's decision provides "an accurate and logical bridge from the evidence" relied upon to his conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

\*

On appeal, Cynthia challenges only the ALJ's finding that her psychiatric and cardiac symptoms were not "as serious as she claimed because of the lack of treatment by a mental

8

health professional and a cardiologist." Pl.'s Br. 8–9. She asserts that ALJ O'Hara "disregarded" her testimony that she "could not afford treatment" in reaching this conclusion and instead relied entirely on his assumption that most people know "treatment is available at reduced rates or free of charge through programs like free clinics." *Id.* at 8 (citing R. 24). ALJ O'Hara cited two aspects of Cynthia's treatment history in explaining why her and her daughter's allegations that Cynthia suffered "significant" symptoms and limitations during the relevant period were "not consistent with the longitudinal record," R. 22, 24. *See* R. 19–20, 22–24.

First, he found that Cynthia received "routine and conservative" treatment, R. 22, which was not what "one would expect for an individual asserting completely disabling conditions," R. 24. Her depression and bi-polar symptoms were "treated with medication prescribed by a primary care provider," R. 23; *see, e.g.*, R. 317–18, 335, 361, 373, 376, 379, 381, 407, 439, and she was "on an aspirin regimen" for hypertension and history of transient ischemic attacks, R. 23; *see, e.g.*, R. 318, 409, 419, 438–40. Cynthia does not point to any evidence in the record suggesting that healthcare providers "prescribe[d] a 'conservative' course of treatment" for reasons unrelated to the severity of those symptoms, or that she "required more aggressive" mental-health or cardiac "treatment yet received conservative treatment for other reasons," *Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015). *See* Pl.'s Br. 8 (citing R. 59, 72). Nor does she challenge ALJ O'Hara's finding that Cynthia's "treatment was not as aggressive as one would reasonably think would be employed" if her symptoms "were actually [as] severe" as she and her daughter claimed. *Dunn*, 607 F. App'x at 275; *see* R. 24. On this record, there is substantial evidence "to support the ALJ's decision to take the conservative nature of [Cynthia's] treatment into consideration in finding her claim of total disability incredible." *Dunn*, 607 F. App'x at 275.

Second, ALJ O'Hara discounted Cynthia's "inability to access treatment" because he

9

found "it is generally known that treatment is available at reduced rates or free of charge through free clinics, community services boards (for mental health treatment), or [s]tate facilities for individuals who cannot afford to pay, as well as in emergency rooms, which [Cynthia] ha[d] used." R. 24. Cynthia understandably objects to ALJ O'Hara crediting his own opinion of what people generally know about healthcare—which he did not link to any evidence in her record—over Cynthia and her daughter's testimony that *they* did not know about the community services boards, Pl.'s Br. 8–9. *See Eggleston v. Colvin*, No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013) (ALJ's reasons for discounting a claimant's testimony "must be grounded in the evidence" of record and "cannot be based on an intangible or intuitive notion about" its reliability); *Van Huss v. Heckler*, 572 F. Supp. 160, 167 (W.D. Va. 1983) (ALJ cannot "rely on his own [opinions] and expertise" in evaluating claimant's medical impairments and symptoms unless supported by relevant evidence in the claimant's record).

Contrary to Cynthia's suggestion, however, ALJ O'Hara did not "penalize[]" her for failing to seek treatment that she could not afford. Pl.'s Br. 8. Instead, he cited evidence that Cynthia actually "used" emergency or reduced-cost healthcare providers as one reason why her mental-health and cardiac symptoms were not as incapacitating as she and her daughter claimed. R. 23–24; *see, e.g.*, R. 319–26, 332–34, 403–05, 407–10, 438–41. If Cynthia "exhausted the availability" of those resources, then "evidence to that effect should have been presented" by her attorney. *Mabe v. Colvin*, No. 4:12cv52, 2013 WL 6055239, at *7 (W.D. Va. Nov. 15, 2013) (Kiser, J.); *see Schaller v. Colvin*, No. 5:13cv334, 2014 WL 4537184, at *8 (E.D.N.C. Sept. 11, 2014) ("Claimant was represented by counsel, and the ALJ was allowed to presume that he presented his best case."). Without it, "there is no ascertainable reason why [Cynthia] could not have returned to [those providers] for treatment," *Mabe*, 2013 WL 6055239, at *7, more

10

frequently during the relevant period, *see* R. 23–24 (citing extended gaps in treatment).

Moreover, Cynthia does not challenge ALJ O'Hara's separate finding that her psychiatric and cardiac symptoms were "not consistent with," R. 22, her "generally unremarkable" exams and diagnostic studies throughout the relevant time, R. 23–24 (citing R. 332, 362, 367, 372, 389–90, 403–05, 408, 418–19, 439, 445, 448–49). *See* Pl.'s Br. 8–9. The ALJ was not required to accept Cynthia's allegations "to the extent they [were] inconsistent with the available evidence, including objective evidence of the underlying impairment," in the longitudinal record. *Hines*, 453 F.3d at 565 n.3. He reasonably found that Cynthia's allegedly "significant" symptoms and limitations, R. 24, were out of proportion to providers' overwhelmingly normal findings on mental-status and cardiac exams both before and throughout the relevant period, *see, e.g.*, R. 317, 321, 332, 353, 361–62, 372, 375, 378, 380, 389, 404, 408, 415–16, 419, 439.

Cynthia does not identify any reversible error in ALJ O'Hara's analysis or "point to any specific piece of evidence not considered by the [ALJ] that might have changed the outcome of [her] disability claim." *Reid*, 769 F.3d at 865 (emphasis omitted). Instead, she urges the Court to reweigh the same testimony that ALJ O'Hara considered, *see* Pl.'s Br. 7–9, and to conclude that he should have found her disabled. The Court's role here is "to determine whether the ALJ's decision is supported as a matter of fact and law." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). "There were a number of conflicts in the evidence here," and the Court will "not second guess the ALJ in resolving those conflicts." *Id.* ALJ O'Hara's written decision is clear enough to show that he "performed an adequate review of the whole record and the decision is supported by substantial evidence." *Id.*

## IV. Conclusion

For the foregoing reasons, I find that substantial evidence supports the Commissioner's

11

final decision. Accordingly, I respectfully recommend that the presiding District Judge **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 23, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: December 26, 2019

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge